(804 P.2d 1009)

No. 65,444

HAROLD SANSTRA, *Appellant*, v. THE KANSAS HIGHWAY PATROL
AND THE CAPITOL AREA SECURITY PATROL, *Appellees*.

Opinion filed January 11, 1991.

*Brad E. Avery,* general counsel, of Kansas Association of Public Employees, of Topeka, for the appellant.

*Carol R. Bonebrake,* assistant attorney general, and *Robert T. Stephan,* attorney general, for the appellees.

Before BRISCOE, C.J., GERNON, J., and JANICE D. RUSSELL, District Judge, assigned.

RUSSELL, J.: Harold Sanstra appeals the district court's order affirming the decision of the Kansas Civil Service Board which terminated his employment with the Kansas Highway Patrol and Capitol Area Security Patrol.

Sanstra was an employee of the Capitol Area Security Patrol. On July 26, 1988, he reported for work at 7:00 a.m. His appearance and behavior that day were different, but not particularly disruptive. His eyes were watery and bloodshot, and his breath smelled of alcohol. His speech was louder than normal, although his conversation was coherent. He was seen patting a female employee on her back. Despite his unusual behavior, Sanstra was able to appropriately handle two incidents of unauthorized persons in the building, and his superior agreed his behavior did not have a negative impact on the agency. However, a breath test performed around noon showed he had a blood alcohol concentration of .173. It was later established that there had been a party at Sanstra's home the night before which had lasted until about 3:30 a.m.

Sanstra was dismissed and he appealed to the Kansas Civil Service Board, which upheld the dismissal. He then appealed to the district court, which affirmed the dismissal. Upon review, we affirm the decision of the district court and the Civil Service Board.

Our scope of review of an administrative decision is governed by K.S.A. 77-621. K.S.A. 75-2929h provides that orders of the civil service board are subject to judicial review in accordance with the Act for Judicial Review and Civil Enforcement of Agency Actions, K.S.A. 77-601 *et seq.*

This appeal involves interpretation of several subsections of the Kansas Civil Service Act, K.S.A. 75-2925 *et seq.*

K.S.A. 75-2949 provides generally the method and reasons for dismissing a civil service employee. The statute permits the dismissal or demotion of an employee "when the appointing authority considers that the good of the service will be served thereby." K.S.A. 75-2949(a).

A predecessor to K.S.A. 75-2949 was interpreted in *Swezey v. State Department of Social & Rehabilitation Services,* 1 Kan. App. 2d 94, 562 P.2d 117 (1977). In that case, Betty Swezey filled out false patient records purporting to show that a co-worker was a patient at the Topeka State Hospital. The false papers were intended as a joke, but somehow they fell into the hands of Swezey's supervisor, who terminated her employment "for the good of the service" because of her practical joke. On appeal, the district court reversed and this court affirmed the district court, holding:

"Legal cause for dismissal exists if the facts disclose the employee's conduct is of a substantial nature and directly impairs the efficiency of the public service, but there must be a real and substantial relation between the employee's conduct and the efficient operation of the public service; otherwise, legal cause is not present." 1 Kan. App. 2d at 100.

Sanstra concedes his blood alcohol concentration was .173. However, he contends his intoxication did not affect his ability to perform his job that day. Thus, he argues his condition did not directly impair the efficiency of the public service and, therefore, he could not lawfully be dismissed.

Since the decision was filed in *Swezey,* the legislature has enacted new sections in chapter 75 that modify the effect of *Swezey.* K.S.A. 75-2949d(a) provides that an employee may be dismissed because of "personal conduct detrimental to the state service." K.S.A. 75-2949f lists nineteen specific examples of "personal conduct detrimental to the state service." Included is "(m) being under the influence of alcohol or drugs while on the job."

Sanstra argues that 75-2949d and 75-2949f must be read in conjunction with the *Swezey* case. He argues that *Swezey* provides an interpretive overlay that requires that the employee's intoxication "directly impair the efficiency of the service" before he or she can be fired. On the other hand, the State argues the existence of any of the factors listed in 75-2949f is legal cause per se and requires no finding of direct impairment.

We believe that the correct interpretation of 75-2949d and 75-2949f supports the State's argument.

"The fundamental rule of statutory construction, to which all others are subordinate, is that the intent of the legislature governs . . . . [Citations omitted.] In determining legislative intent, courts are not limited to consideration of the language used in the statute, but may look to the historical background of the enactment, the circumstances attending its passage, the purpose to be accomplished, and the effect the statute may have under the various constructions suggested. [Citations omitted.] Ordinarily, courts presume that by changing the language of a statute the legislature intends to change its effect." *Citizens State Bank of Grainfield v. Kaiser*, 12 Kan. App. 2d 530, 536, 750 P.2d 422, *rev. denied* 243 Kan. 777 (1988).

The logical interpretation of 79-2949f(m) is that the legislature intended that intoxication on the job be sufficient, in and of itself, for discipline under 75-2949. The fact that 79-2949f was enacted after the *Swezey* decision indicates that the legislature intended to establish a category of conduct that is per se cause for discipline, obviating the need for the Board to find that there was direct impairment of the public service. All of the activities listed in 75-2949f would have been grounds for dismissal if they directly impaired the public service, as required by *Swezey*. Therefore, the enactment of 75-2949f would have been superfluous had the legislature not intended to make these activities per se grounds for discipline. Of course, any activities falling outside the listing of enumerated circumstances found in 75-2949f could still serve as a ground for dismissal provided there is a showing of direct impairment on the service as required by *Swezey*.

Sanstra also complains that the Civil Service Board which heard the appeal of his dismissal was not properly constituted. A hearing was held before two board members and they reported their findings to a third board member. The three members then made the decision to uphold Sanstra's dismissal.

Sanstra argues all three board members were required to be present to hear his appeal. He bases his argument on K.S.A. 75-2929b(c), which provides: "Meetings of the board shall be open to the public and no meeting or hearing of the board shall be held unless at least three members of the board are present." Sanstra's argument ignores K.S.A. 75-2929b(b), which provides:

"The board shall organize annually by electing one of its members as chairperson and one as vice-chairperson. The board shall meet regularly at

least once each calendar quarter and special meetings may be called by the chairperson or by a majority of the board. A quorum of the board shall consist of three members. No action may be taken by the board without the affirmative vote of at least three members. *In the holding of hearings of appeals by employees or appointing authorities pursuant to the Kansas civil service act, the board may delegate to one or more of its members the authority to serve as a hearing examiner for such a hearing, but action upon any such appeal shall require the concurrence of at least three members of the board."* (Emphasis added.)

In reconciling the conflict between the two subsections, we are mindful of the familiar rules of statutory construction previously stated, as well as the one set forth in *Kansas Racing Management, Inc. v. Kansas Racing Comm'n,* 244 Kan. 343, 353, 770 P.2d 423 (1989):

"It is the duty of the court to reconcile different statutory provisions so as to make them consistent, harmonious, and sensible. [Citations omitted.] General and special statutes should be read together and harmonized whenever possible, but to the extent a conflict between them exists, the special statute will prevail unless it appears the legislature intended to make the general statute controlling. [Citation omitted.]"

Applying these rules of construction to the statute in question, we hold that the legislature intended to differentiate between "meetings" and "hearings of appeals." "Meetings" must be attended by at least three members of the board in order for any business to be conducted. The specific, specialized type of meetings held to conduct "hearings of appeals," however, can be held with only one board member present. That board member, designated to act as a hearing examiner, must then report to other board members, at least three of whom must agree on the appropriateness of the disciplinary action in question.

The statute was satisfied by holding the hearing in the presence of two board members, who later obtained the concurrence of a third member to uphold Sanstra's dismissal.

Affirmed.