(917 P.2d 1357)
·No. 74,315

SANDRA D. NEWELL, *Appellant,* v. KANSAS DEPARTMENT OF SOCIAL AND REHABILITATION SERVICES, *Appellee.*

Opinion filed June 14, 1996.

*John T. Bird* and *Scott J. Miller*, of Glassman, Bird & Braun, of Hays, for appellant.

*Barbara J. Clinkscales*, of Kansas Department of Social and Rehabilitation Services, of Hays, for appellee.

Before MARQUARDT, P.J., GERNON and PIERRON, JJ.

MARQUARDT, J.: Sandra D. Newell appeals the trial court's decision which affirmed the Kansas Civil Service Board's (Board) termination of her employment by the Kansas Department of Social and Rehabilitation Services (SRS). Newell contends that SRS violated the statutory procedure for termination of a permanent civil service employee and that the decision to terminate her was not supported by substantial competent evidence.

Newell began working for SRS in 1986 as a social worker in adult services. Newell was responsible for investigating reports of adult abuse, assessing the need for in-home services for the elderly and disabled, and assessing the need to initiate conservatorship/guardianship proceedings.

Deana Robben became Newell's supervisor in January 1991. Based on a consultation with Newell's former supervisor, Robben rated Newell's job performance as satisfactory on her 1990 evaluation. Robben rated Newell's job performance as unsatisfactory on her 1991 evaluation. Newell's job performance was reevaluated during the next 60 days and she received a satisfactory rating.

In August 1992, Robben warned Newell about her inadequate job performance. Notwithstanding Robben's warning, Newell's job performance did not improve. Newell received an unsatisfactory

rating for the evaluation period February 12, 1992, to February 11, 1993.

Newell sustained a workers compensation injury on January 11, 1993. Newell was on medical leave from February 3, 1993, to September 8, 1993. Newell received an unsatisfactory rating for the evaluation period September 8, 1993, to December 17, 1993.

On March 3, 1994, SRS notified Newell of her proposed dismissal and offered her the opportunity to respond. On March 15, 1994, Newell met with Gene Dawson, director of the Hays area SRS. Newell's employment was terminated effective March 17, 1994.

Newell appealed her dismissal to the Board. The Board affirmed Newell's dismissal by SRS. Newell timely filed a petition for judicial review. The district court affirmed the decision of the Board. Newell timely filed her notice of appeal.

K.S.A. 75-2949 *et seq.* provides a procedure for summary dismissal of civil service employees.

K.S.A. 75-2949e(b) and (c) provide:

"(b) Unless the appointing authority determines that the good of the service will best be served by proceeding directly to the procedure prescribed in K.S.A. 75-2949 and amendments thereto, the appointing authority may propose dismissal . . . of a permanent employee for deficiencies in work performance only after the employee has received two performance evaluations in the 180 calendar days immediately preceding the effective date of the proposed dismissal . . . .

"(c) If the appointing authority proposes to dismiss . . . a permanent employee for deficiencies in work performance without the two evaluations described by subsection (b) and if the employee appeals the action to the state civil service board, the board shall require the appointing authority to show that the employee was adequately counseled concerning the nature of the deficiencies in work performance and concerning what was expected of the employee in correcting the deficiencies."

Newell contends that once SRS had initiated termination proceedings under either subsection (b) or (c), it could only proceed under that individual subsection. Newell contends her dismissal was initiated under subsection (b) and since she did not have two unsatisfactory performance evaluations in the 180 days immediately preceding the dismissal, SRS could not terminate her. In the alternative, Newell suggests that before the appointing authority

could proceed under subsection (c), it must show that "the good of the service [would] best be served by proceeding directly to" termination. K.S.A. 75-2949e(b).

This issue requires that this court interpret various provisions of the Kansas Civil Service Act, K.S.A. 75-2925 *et seq.* Statutory construction is a question of law over which this court's review is unlimited. *Foulk v. Colonial Terrace*, 20 Kan. App. 2d 277, Syl. ¶ 1, 887 P.2d 140 (1994), *rev. denied* 257 Kan. 1091 (1995).

The provisions of K.S.A. 75-2949 *et seq.* must be read " 'together with a view of reconciling and bringing them into workable harmony and giving effect to the entire statute if it is reasonably possible to do so.' " See *Guardian Title Co. v. Bell*, 248 Kan. 146, 151, 805 P.2d 33 (1991) (quoting *Easom v. Farmers Insurance Company*, 221 Kan. 415, Syl. ¶ 3, 560 P.2d 117 [1977]).

K.S.A. 75-2949(a) provides that "[a]n appointing authority may dismiss or demote any permanent employee in the classified service when the appointing authority considers that the good of the service will be served thereby." Subsection (b) merely restates the general spirit of the Act which requires that all dismissal decisions be for some legal cause, *i.e.*, for the "good of the service." See *Swezey v. State Department of Social & Rehabilitation Services*, 1 Kan. App. 2d 94, 99, 562 P.2d 117 (1977). Newell's contention that SRS must make an additional "good of the service" finding prior to dismissing an employee who has not had two unsatisfactory performance evaluations within a 180-day period is incorrect.

An appointing authority has presumptive justification for the dismissal of an employee who has had two unsatisfactory performance evaluations within the 180-day period immediately preceding the dismissal.

If the employee has not received two unsatisfactory performance evaluations in the 180-day period immediately preceding the date of dismissal, *and* the employee appeals the dismissal, the appointing authority is required to establish that the employee was adequately counseled concerning the nature of the deficiencies in his or her work performance and what was expected of the employee to correct the deficiencies. K.S.A. 75-2949e(c).

In essence, the interplay between subsections (b) and (c) of K.S.A. 75-2949e merely establishes which party will carry the burden of persuasion during the appeal process. An unsatisfactory performance evaluation carries with it a presumption that the employee was apprised of the deficiencies in his or her performance and was advised of what measures needed to be taken to improve. If the appointing authority can establish that the employee has been independently advised as to his or her deficiencies in performance and has been counseled on how to improve, the statutory requirement has been met.

Newell fails to cite any authority to demonstrate that the procedures outlined in subsections (b) and (c) are mutually exclusive. Nothing in the statute requires that an agency elect one method of termination and "stick" with that method until the termination process has been completed. Newell cites to *Swezey*, 1 Kan. App. 2d at 98, in which this court indicated that "[w]here a statute sets forth the procedure for dismissal and requires that the cause of dismissal be stated in writing, the written statement so made is conclusive of the cause of removal."

Newell erroneously asserts that SRS chose to initiate the dismissal process under K.S.A. 75-2949e(b) and limited its written letter of dismissal to that procedure. Newell would arguably be correct if SRS had limited its proposed dismissal to subsection (b). However, a review of the written statement provided to Newell reveals that SRS placed no such limitation on the dismissal procedure.

In its March 3, 1994, letter, SRS provided the following reasons in support of Newell's proposed dismissal: "Deficiencies in work performance as documented in unsatisfactory performance evaluations for the periods 02-12-92 to 02-11-93 and 09-08-93 to 12-17-93. . . . Specific deficiencies in [Newell's] work performance are outlined in [her] performance evaluations." SRS's reference to two evaluations does not commit SRS to proceed under K.S.A. 75-2949e(b). The factual support for Newell's dismissal under subsection (c) is the same as that for termination under subsection (b) except that Newell's two unsatisfactory performance evaluations did not occur within the prescribed period. Therefore, in the event

of a subsequent appeal, SRS could not merely rely on the existence of the two unsatisfactory performance evaluations to support its decision to terminate Newell. SRS was required to establish that Newell had been given counseling and the opportunity to improve her performance prior to dismissal. The requirement of the "adequate counsel" provision comes into play once the employee decides to appeal from the dismissal. Newell's contention that exclusive reliance on a specific subsection must be stated in the appointing authority's original written notice of proposed termination is without basis. Subsections (b) and (c) of K.S.A. 75-2949e are not mutually exclusive.

Newell argues that even if the district court properly followed the statutory procedure, SRS's decision to terminate her employment was not supported by substantial competent evidence.

Substantial evidence is evidence which possesses both relevance and substance and which furnishes a substantial basis of fact from which the issues can reasonably be resolved. *Dutta v. St. Francis Regional Med. Center, Inc.*, 18 Kan. App. 2d 245, 258, 850 P.2d 928 (1993), *aff'd* 254 Kan. 690, 867 P.2d 1057 (1994).

This court's review is limited to whether there is evidence to support the fact that Newell's job performance had been unsatisfactory and whether Newell was advised of the measures that needed to be taken to improve her performance. Appellate courts are not to reweigh the testimony or pass on the credibility of witnesses. *McKissick v. Frye*, 255 Kan. 566, Syl. ¶ 8, 876 P.2d 1371 (1994).

For the period December 12, 1990, to December 11, 1991, Robben rated Newell's performance as unsatisfactory, indicating that "[o]rganization of time, follow-up on client service, and cooperation with agency staff need improvement." In February 1992, Newell was reevaluated and received a satisfactory rating; however, Robben indicated on the evaluation that "Sandra needs to continue to maintain current caseloads and monitor her work production to be able to continue completing job responsibilities in a satisfactory manner. When problems arise, Sandra needs to continue to consult with supervisor."

Robben's letter of August 11, 1992, instructed Newell to "[u]se an assertive and caring approach versus an [aggressive] and blaming approach." Robben warned Newell that "[i]f improvement is not seen in the [listed] areas of concern, a special evaluation will be conducted." Newell's job performance was rated as unsatisfactory at the end of 1992. A 60-day reevaluation was not done because Newell sustained a workers compensation injury in January 1993 and was on medical leave from February 3, 1993, to September 8, 1993.

When Newell returned from medical leave, Robben met with her to discuss what accommodations SRS could make to help her. SRS allowed Newell to work 4-hour days with a 100-mile driving limit. Newell's case load was reduced to conform to her limitations. Robben set organizational goals for Newell and met with her to discuss ways in which she could improve her work performance. Newell acknowledged that despite her restrictions she would be able to manage the reduced workload. Notwithstanding these assurances, Newell had difficulty meeting some of the goals.

Robben conducted a job performance reevaluation for the period September 8, 1993, to December 17, 1993, rating Newell's performance as unsatisfactory. In the evaluation, Robben had written, "Due to lack of improvement from the last evaluation, Sandra has received the above rating. Numerous efforts have been made by this Supervisor to help Sandra improve her work performance. Sandra has not demonstrated a satisfactory response to Supervisor's suggestions for improvement of work performance." At the Board's review hearing, Robben testified that she had made every effort to help Newell improve her job performance prior to her termination. Robben testified that in conducting the final evaluation, she did take into account that Newell had been gone for a period of time; however, the evaluation period was long enough for Robben to determine that Newell had not made sufficient improvements in her job performance.

David Schmidt, SRS chief of social services for the Hays area, discussed Newell's performance with Robben and how Robben was to counsel Newell concerning the unsatisfactory evaluation she received for the year 1991. Schmidt also met with Robben con-

cerning Newell's unsatisfactory evaluation in February 1993. Newell was given the opportunity to meet with Robben and Schmidt to discuss this evaluation. Schmidt also visited with Newell to discuss ways in which Newell could improve her work performance.

Newell's entire job performance history evidences the willingness of SRS supervisors to work with her and Newell's inability to maintain a level of competence for a sustained period of time.

The record contains substantial competent evidence to support the Board's findings that Newell was terminated due to her unsatisfactory job performance and that Newell was adequately counseled prior to her termination.

Affirmed.