MODIFIED

No. 111,327

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

TONY MARQUEZ,
*Appellant*,

v.

KANSAS DEPARTMENT OF CORRECTIONS,
*Appellee*.

SYLLABUS BY THE COURT

1.

How permanent State employees may be dismissed, demoted, or suspended for work deficiencies due to incompetence or negligence is set out in the Kansas Civil Service Act, K.S.A. 75-2925 *et seq.*

2.

K.S.A. 75-2949e(b) permits an appointing authority to dismiss, demote, or suspend a permanent state employee for deficient work performance after the employee has received two performance evaluations in the 180 days preceding the proposed discipline and the evaluations were spaced at least 30 days apart.

3.

If the appointing authority wants to dismiss, demote, or suspend a permanent state employee for deficient work performance without two evaluations, K.S.A. 75-2949e(c) provides that in the event of an appeal to the Civil Service Board by the employee, the Board must require the appointing authority to show that the employee was adequately

1

counseled on the nature of any work deficiencies and what was expected of the employee in correcting the deficiencies.

Appeal from Shawnee District Court; REBECCA W. CROTTY, judge. Original opinion filed August 29, 2014; modified opinion filed October 3, 2014. Reversed.

*Morgan L. Roach* and *Nicholas S. Ruble*, of McCauley & Roach, LLC, of Kansas City, Missouri, for appellant.

*Linden G. Appel*, chief legal counsel, of Kansas Department of Corrections, for appellee.

Before ATCHESON, P.J., HILL and ARNOLD-BURGER, JJ.

HILL, J.: Parole officer Tony Marquez appeals his 10-day suspension from his job with the Kansas Department of Corrections. As a classified state employee, Marquez is subject to the rules of the Kansas Civil Service Act, K.S.A. 75-2925 *et seq*. If classified employees appeal their suspensions to the Civil Service Board, the Act requires the appointing authority to show that these employees were adequately counseled on the nature of their work deficiencies unless they had received two prior work evaluations at least a month apart before any suspension. Marquez had not received two unsatisfactory evaluations, and he appealed his suspension to the Civil Service Board. Because the Board failed to require the appointing authority to show that Marquez had been adequately counseled on his work deficiencies before imposing a 10-day suspension, we must reverse his suspension. Accordingly, we reverse the district court's order approving Marquez' suspension.

*Marquez learns of his job suspension.*

Marquez has worked as a parole officer with the Kansas Department of Corrections for 21 years. He is a permanent employee in the classified service as set out

in the Kansas Civil Service Act. In 2010, inmate Wyatt Parnell was released on parole and Marquez was assigned as his parole officer. Parnell was considered a moderate risk offender and was required to meet with Marquez at least once a month. In addition to the usual parole conditions there were three special conditions placed on Parnell. These special conditions were:

(1)    "participation in an assessment for appropriate counseling with emphasis on batterer's intervention";

(2)    "no-cohabitation in a household where children less than 15 years old reside";

(3)    "be assessed by a qualified mental health professional or prescribing physician."

Accompanied by his mother, Parnell reported to Marquez. Parnell's mother stated Parnell would be residing with her and his brother; no children were living at the home. Marquez reviewed the special parole conditions with Parnell at this meeting. Later, Parnell brought his children twice to his meetings with Marquez. Marquez did not indicate in his notes whether he had asked if Parnell was living with either child.

Later, Shawna Mobley, the Batterer's Intervention Program Director, assessed Parnell. As a result, Parnell was scheduled to attend batterer's classes beginning in February 2011. In May 2011, Marquez was aware that Parnell had been absent from those classes. Marquez asked Mobley about these absences and he told her that he would contact Parnell about them. On June 23, 2011, Marquez and his supervisor, Dale Johnson, performed a residence check on Parnell, but he was not home. When Marquez and Johnson spoke with Parnell's mother, she said Parnell had missed the classes because he did not have money for transportation. Marquez later testified that Parnell would not have had his parole revoked based solely on Parnell's failure to attend those classes.

3

Then, in June 2011, Marquez was told of Parnell's arrest and that Parnell was under investigation for child abuse. Marquez met with Parnell for a jail interview where Marquez performed a drug test on Parnell. When Parnell tested positive for THC and he admitted using marijuana, Marquez submitted an offender revocation staffing form seeking approval to revoke Parnell's parole. Parnell's parole revocation was approved.

After that, Parole Officer Lori Ryan began supervision of Parnell. Eventually, Parnell was accused of multiple crimes, including beating his pregnant girlfriend, raping her, and branding her with a fork. This incident was reported in the media. Sally Frey, Director of the Southern Parole Region and Marquez' appointing authority, stated that when incidents such as Parnell's occur, it is routine to review the case.

Marquez' case file on Parnell was reviewed. The review included Marquez' handling of Parnell's parole. In November 2011, with his union representative present, Marquez met with Frey, Risk Reduction and Reentry Manager Aimee Huffman, and Marquez' two supervisors.

Eventually, Marquez received a letter from Frey advising him of a proposed 30-day suspension. Marquez met with Frey and the human resources director regarding the proposed suspension. Frey sent a letter to Marquez explaining his reduced suspension of 10 days was for "the good of the service."

Marquez appealed the suspension to the Kansas Civil Service Board. The Board concluded that Marquez' handling of the supervision of Parnell "exhibited an incompetency and/or negligence in the performance of his duties." The Board upheld the suspension. Marquez filed a petition for reconsideration; the Board rejected his petition and affirmed its prior order. Marquez sought judicial review of the agency action with the district court. The district court denied his petition.

4

*The Board did not ask about counseling.*

Marquez contends the Board ignored the statutory requirement that he must be adequately counseled on his work deficiencies before his suspension. In his view, K.S.A. 75-2949e directs the Board to require the Department's appointing authority, Frey, to show Marquez received adequate counseling. Marquez argues he did not receive any counseling and therefore the Board did not make the requisite findings sufficient to affirm his suspension.

This issue requires us to interpret provisions of the Kansas Civil Service Act. Interpretation of a statute is a question of law over which appellate courts have unlimited review. *Milano's, Inc. v. Kansas Dept. of Labor*, 296 Kan. 497, 500, 293 P.3d 707 (2013).

Statutory authority for the discipline of permanent employees begins with K.S.A. 2013 Supp. 75-2949(a). The statute speaks first to the dismissal or demotion of employees for the good of the service. "An appointing authority may dismiss or demote any permanent employee in the classified service when the appointing authority considers that the good of the service will be served thereby." K.S.A. 2013 Supp. 75-2949(a). We take that to mean that the "good of the service" finding pertains *only* to instances of employee dismissal or demotion. The law then proceeds to mention suspension of employees in the next sentence. "For disciplinary purposes, an appointing authority may suspend without pay a permanent classified employee for a period not to exceed 30 calendar days." K.S.A. 2013 Supp. 75-2949(a). There is no mention of suspensions "for the good of the service."

From these general concepts, the statutes progress to specifics. Permanent employees may be dismissed, demoted, or suspended for deficiencies in work performance because they are incompetent or negligent in the performance of their

5

duties. See K.S.A. 75-2949e(a)(1) and (2). The Board concluded in this case that Marquez was incompetent and/or negligent.

The procedure for suspending an employee is found in K.S.A. 75-2949e(b) and (c):

"(b) Unless the appointing authority determines that the good of the service will best be served by proceeding directly to the procedure prescribed in K.S.A. 75-2949 and amendments thereto, the appointing authority may propose dismissal, demotion or suspension of a permanent employee for deficiencies in work performance *only* after the employee has received two performance evaluations in the 180 calendar days immediately preceding the effective date of the proposed dismissal, demotion or suspension. These performance evaluations shall be spaced at least 30 calendar days apart.

"(c) If the appointing authority proposes to dismiss, demote or suspend a permanent employee for deficiencies in work performance without the two evaluations described by subsection (b) and if the employee appeals the action to the state civil service board, the board shall require the appointing authority to show that the employee was adequately counseled concerning the nature of the deficiencies in work performance and concerning what was expected of the employee in correcting the deficiencies." (Emphasis added.)

The appointing authority here sought to suspend Marquez without the two work performance evaluations mentioned in the statute. By doing so, the law required the Board to have the appointing authority show that Marquez had been adequately counseled on how his performance was deficient and what was expected of him in improving his performance.

6

The Department argues, and the district court agreed, that if there is a "good of the service" finding, then the appointing authority is not required to show there was adequate counseling. We find that position to be erroneous.

The statute is plain and unambiguous. If the appointing authority wishes to suspend an employee, the authority can suspend either by using evaluations or through job performance counseling and then suspension. K.S.A. 75-2949e(c) tells the Board to require the appointing authority to show that the employee was adequately counseled on the nature of the work deficiencies and how to correct them if there are no evaluations.

The appointing authority *must advise an employee of his or her shortcomings before imposing any suspension*. The presence of two evaluations within 6 months before imposing discipline implies the appointing authority has counseled the employee about his or her work deficiencies

Clearly, subsection (c) places the burden on the appointing authority to show the employee was adequately counseled prior to any suspension. Under this subsection, if there is a proposed suspension for deficiencies in work performance but two evaluations did not occur and the employee appeals the suspension, then the Board "shall require the appointing authority to show that the employee was adequately counseled concerning the nature of the deficiencies in work performance." K.S.A. 75-2949e(c); see *Newell v. Kansas Dept. of SRS*, 22 Kan. App. 2d 514, 517, 917 P.2d 1357, *rev. denied* 260 Kan. 994 (1996).

The record in this appeal is clear. The appointing authority wished to impose a 10-day suspension on Marquez without using performance evaluations. Marquez appealed this decision to the Board. As outlined in K.S.A. 75-2949e(c), the Board should have required the appointing authority, Frey, to show that Marquez was "adequately counseled" prior to his suspension. In its final order, the Board made no findings

7

regarding the appointing authority's counseling requirement. Thus, we hold this Board action did not comply with the law.

Additionally, the district court misinterpreted the statute. It held: "Frey made a finding of 'good of the service' and therefore, was not required to provide a showing of adequate counsel on the work performance deficiencies." With such an interpretation, the court clearly ignored the language of K.S.A. 75-2949e(c): "If the appointing authority proposes to . . . suspend . . . for deficiencies in work performance *without* the two evaluations . . . , the board shall require the appointing authority to show that the employee was adequately counseled . . . ." (Emphasis added.) The district court's misinterpretation effectively nullifies subsection (c).

Oddly, even after it determined counseling was not a requirement, the district court went on to decide Marquez had received adequate counseling. The district court did so by shifting the burden from the appointing authority to Marquez. The court held: "None of these testimonies conclude that Marquez did not receive counseling on the issue. Therefore, the Court finds that Marquez was adequately counseled prior to his suspension." We take this statement to mean that because no one said Marquez did *not* receive counseling, therefore he *did* receive counseling. We question the soundness of that conclusion, especially since the Board never addressed the issue with the appointing authority.

Another panel of this court has addressed a similar issue. In *Del Gaudio v. Kansas Dept. of Corrections*, No. 99,754, 2009 WL 3378204 (Kan. App. 2009) (unpublished opinion), *rev. denied* 290 Kan. 1092 (2010), the court addressed both the issue of counseling and the issue of burden shifting. In a case dealing with the dismissal of an employee and a record of adequate job performance counseling, the *Del Gaudio* court held:

"K.S.A. 75-2949e(b) also provides, however, that if the appointing authority 'determines that the good of the service will best be served by proceeding directly' to dismissal without the two performance evaluations, then under K.S.A. 75-2949e(c), 'the [B]oard shall require the appointing authority to show that the employee was adequately counseled concerning the nature of the deficiencies in work performance and concerning what was expected of the employee in correcting the deficiencies.' In this situation, the appointing authority bears 'the burden of persuasion during the appeal process' to 'establish that the employee has been independently advised as to his or her deficiencies in performance and has been counseled on how to improve.' [Citation omitted.]" 2009 WL 3378204, at *12.

The burden is on the appointing authority to show Marquez received adequate counseling prior to his suspension. The district court here erroneously shifted the burden onto Marquez by finding he failed to show that he was not adequately counseled and then concluding he received adequate counseling.

Finally, there was a mention in the appointing authority's suspension letter that a possible ground for suspension was "personal conduct detrimental to the state service," mentioned in K.S.A. 75-2949f. That statute deals only with personal conduct of a state employee amounting to gross misconduct or conduct grossly unbecoming a state employee. Such conduct includes conviction of a crime, immoral conduct, willful abuse or misappropriation of state funds, and other gross acts. These serious actions can be grounds for dismissal, demotion, or suspension. Since the Board made no findings of gross negligence or gross misconduct by Marquez here, we hold that statute is immaterial to this appeal.

Because the Board failed to follow the required statutory procedure, we reverse Marquez' suspension and reverse the district court's order affirming the suspension.

Reversed.

9