No. 84,338

JOHN W. CONNELLY, PAUL L. WADE, JR., MELVIN M. WEDERMYER, and WILLIAM R. BARRETT, *Plaintiffs/Appellees/ Cross-appellants*, v. STATE OF KANSAS, KANSAS HIGHWAY PATROL, *et al.*, *Defendants/Appellants/Cross-appellees*.

(26 P.3d 1246)

Opinion filed July 20, 2001.

*Anne L. Baker*, of Wright, Henson, Somers, Sebeluis, Clark & Baker, LLP, of Topeka, argued the cause, and *Thomas E. Wright*, of the same firm, was with her on the briefs for appellants/cross-appellees.

*Alan L. Rupe*, of Husch & Eppenberger, LLC, of Wichita, argued the cause, and *Kelly J. Johnson*, of the same firm, was with him on the briefs for appellees/ cross-appellants.

The opinion of the court was delivered by

LARSON, J.: This action culminates almost 8 years of litigation before the district courts and administrative bodies. The State of Kansas Highway Patrol now appeals from a jury verdict in favor of four highway patrol trooper plaintiffs in a tort action for retaliatory discharge premised on their contention that their positions were eliminated in retaliation for whistleblowing activities. The troopers have cross-appealed, contending the trial court erred in affirming the Kansas Civil Service Board's (KCSB) denial of relief to three of the troopers under the Kansas Whistleblower Act, K.S.A. 75-2973, and in entering judgment in favor of the State of Kansas on all of the plaintiffs' alleged causes of actions for violations of their right of free speech under 42 U.S.C. § 1983 (1994).

Matters are further complicated by the facts that three of the plaintiffs were classified state employees with permanent status and that the fourth did not have permanent status; contradictory evidentiary findings from a KCSB administrative hearing and a jury trial in district court; and several changes in the caselaw relating to sovereign immunity and the exclusive remedy of state statutes which occurred during the pendency of these actions—especially during their appeals. See *Alden v. Maine*, 527 U.S. 706, 144 L. Ed. 2d 636, 119 S. Ct. 2240 (1999); *Prager v. Kansas Dept. of Revenue*, 271 Kan. 1, 20 P.3d 39 (2001); *Goldbarth v. Kansas State Board of Regents*, 269 Kan. 881, 9 P.3d 1251 (2000); *Schall v. Wichita State University*, 269 Kan. 456, 7 P.3d 1144 (2000).

## Statement of facts and proceedings

The plaintiffs in this case were employees of the Kansas Highway Patrol (Patrol). John W. Connelly started in 1960, Paul L. Wade, Jr., in 1962, Melvin M. Wedermyer in 1959, and William R. Barrett in 1975. Connelly, Wade, and Wedermyer retired as troopers from the Patrol but accepted positions, as did Barrett, as inspectors in the Motor Carrier Inspection Troop (MCIT).

In 1988, the Patrol assumed the responsibility, under the MCIT, of enforcing laws relating to the size, weight, and load of motor vehicles and trailers, K.S.A. 66-1318 and K.S.A. 66-1324, plus the motor carrier inspection stations, K.S.A. 66-1320. By the end of

1992, all four plaintiffs were working as Lieutenants, the highest ranking field positions in the MCIT. The person in command of the MCIT was Major Dennis Tangeman. Connelly, Wade, and Wedermyer reported to Major Tangeman and Barrett reported to Captain Ron Desch.

In September 1992, Governor Joan Finney appointed Colonel Lonnie McCollum as Superintendent of the Highway Patrol. Col. McCollum had the opinion the Patrol was top heavy in management positions and that the budget should be reprioritized. Col. McCollum served until he retired in March 1999. His assistant superintendent was Lt. Col. Terry Scott.

Sometime after his appointment, Col. McCollum was asked by Governor Finney, "What is the problem with the white cars?" MCIT cars were white and the common term used to describe them was "white cars." Complaints about the MCIT were being received from citizens, legislators, other agencies, and the Patrol's own troopers. Kansas has a long history of selective enforcement of weight laws. When Col. McCollum became Superintendent, there was a 5,000 pound overweight tolerance with respect to farm trucks and a 1,000 pound tolerance as to nonfarm vehicles. The limited number of MCIT personnel has always precluded thorough enforcement of weight laws. About this same time, the Federal Highway Administration began pressuring Col. McCollum to strictly enforce the State's weight laws or face forfeiture of federal funds in the approximate amount of $194 million.

According to testimony of all four plaintiffs, Major Tangeman had told them Col. McCollum's job was in jeopardy if the MCIT did not stop ticketing farmers. In response to this pressure, in October 1992, Col. McCollum purportedly instructed the MCIT employees to "leave the farmers alone." The mobile units were instructed to be where the farmers were not. Plaintiff Wade testified, "We had to close our eyes, look the other way, totally leave them alone."

All four of the plaintiffs made it clear to their supervisors that they objected to this order. Lt. Wedermyer listed the order as the number one problem of the MCIT at a troop commanders meeting. Lt. Connelly testified he felt the policy violated his oath of

office and that he had protested loudly. All the plaintiffs testified that due to the paramilitary organization of the Patrol it was appropriate to raise their concerns about Col. McCollum's order internally through the chain of command to their respective supervisors, and all four plaintiffs did so.

In January 1993, the Patrol was informed the MCIT budget had to be reduced by approximately $500,000. Lt. Col. Scott recommended that the agency request restoration of approximately $330,000 to meet payroll and work on a proposal to address all MCIT problems.

In late February, Lt. Col. Scott proposed four options to Col. McCollum to address the problems with MCIT. The first opinion was to do nothing, which was immediately rejected. The second option was to abolish the entire MCIT and transfer its enforcement responsibilities to highway patrol troopers. This was the option recommended by Lt. Col. Scott. Col. McCollum rejected this option because he felt it would disrupt the lives of too many employees. The third option was to proceed with the restructuring Major Tangeman had initiated for the three MCIT regions, with a captain and a lieutenant in charge of each region. Implementing that option would have cost about $350,000 more than the amount appropriated. The fourth option was to integrate the MCIT under the command structure of the Patrol, with the result of eliminating the separate supervisory structure of the MCIT. Col. McCollum met with the Governor and the budget director to appeal reductions but became committed to the fourth option, the plan of placing the MCIT directly under the command of the Patrol. If this was done, it was obvious that the lieutenant positions in the MCIT would no longer be necessary.

In April 1993, a letter was sent to all Patrol employees advising of a restructuring of the Patrol including the MCIT and that a retreat would be held to solicit input. On May 6, 1993, approval of the Department of Administration was obtained to reallocate the MCIT lieutenant positions, and Connelly, Wade, Wedermyer, and Barrett were informed their positions were being eliminated. All four were advised of bumping rights, with Wade, Wedermyer, and

Connelly choosing to be laid off and Barrett remaining employed by the Patrol.

The plaintiffs then voiced their objections to the Kansas Attorney General concerning the "leave the farmers alone" policy on June 1, 1993, and through newspaper articles published in the Kansas City Star on June 4, 1993.

Thereafter, the plaintiffs appealed the layoffs to the KCSB and filed suit against McCollum, Scott, and the State of Kansas for common-law retaliatory discharge and violation of First Amendment rights under 42 U.S.C. § 1983.

After initial appeals concerning jurisdiction determined that the plaintiffs had alleged a violation of K.S.A. 75-2973 and jurisdiction existed before the KCSB, a 5-day hearing was held where the plaintiffs claimed the reorganization violated K.S.A. 75-2973 because it was undertaken in retaliation for their complaints. The Patrol contended the reorganization was made because of budgetary restraints and to eliminate unnecessary middle management positions and improve service at lower costs to the State.

The KCSB order denied the plaintiffs relief and included extensive findings of fact and the following conclusions of law:

"The [defendant's] action eliminating the positions of MCI Lieutenant was a reasonable decision made in response to the severe budgetary constraints imposed on the agency by the Governor and the Legislature for FY 1993 and FY 1994. Furthermore, the decision was one part of a reasonable comprehensive approach to resolving the numerous problems that had been associated with MCIT over many years. Under that approach, the agency instituted a reorganization to integrate MCIT within the regular troop command structure of the Highway Patrol, thereby eliminating the need for the MCIT Lieutenant positions. The reorganization . . . was designed to eliminate unnecessary middle management positions and convert them to direct service positions at a lower cost to the state. The decision to reorganize MCIT and the agency as a whole was made in the legitimate exercise of statutory discretion delegated to the Superintendent of the Highway Patrol. K.S.A. 66-1318; 66-1319; 66-1324; 74-2106; 74-2112; 74-2115.

. . . .

"The appellants have not met their burden of establishing that the decision to eliminate the four MCI Lieutenant positions was a retaliatory action against any of the appellants. The decision to eliminate their positions could not have been made in retaliation for any external reports they made to the Attorney General, the press, or any other person outside the Highway Patrol, because all of the

reports to persons outside the agency were made after the decision was made and the appellants were notified that their positions were to be eliminated.

"The whistleblower statute was not intended to reach objections aired by state employees only within the ranks of the agency itself, known as 'internal whistleblowing.' . . .

". . . Even if internal whistleblowing can be the basis of a claim under the whistleblowers' statute, the respondent agency's decision to eliminate the appellants' positions was not made in retaliation for any internal complaints made by the appellants. . . .

". . . [Plaintiff] Barrett never attained permanent status in the position of MCIT lieutenant to which he was promoted effective December 18, 1994. K.S.A. 75-2944(2). Therefore, he is not entitled to rely on the whistleblower statute to appeal the agency's decision eliminating his position as MCI lieutenant."

Connelly, Wade, and Wedermyer appealed the KCSB decision to the district court, which affirmed the Board, finding it did not erroneously interpret or apply K.S.A. 75-2973. The court found the prescribed procedures for hearing the plaintiffs' appeals had been followed, that the Board decision was supported by substantial evidence, and that the decision was not unreasonable, arbitrary, or capricious.

Summary judgment motions of the State raising issues of the exclusivity of the civil service remedy and collateral estoppel were denied, a requested interlocutory appeal was denied, and the civil actions were the subject of a 2-week trial in May 1999. By agreement of the parties while instructions were being prepared, defendants McCollum and Scott were dismissed in a stipulation which stated:

"1. At all times herein material, Lonnie McCollum and Terry Scott were acting within the scope of their authority as employees of the State of Kansas for all purposes relevant to this lawsuit.

"2. The acts of Lonnie McCollum and Terry Scott relating to the elimination of plaintiffs lieutenant positions in the MCIT were undertaken in their official capacities, and their actions are the responsibility of and attributed to the State of Kansas.

"3. Defendants Lonnie McCollum and Terry Scott are hereby dismissed from this case, in their individual capacity."

The defendants objected to the whistleblowing instruction. The trial court denied defendants' motion for a directed verdict. The jury returned verdicts against the defendant State of Kansas on

both the common-law whistleblower claim and the civil rights claim as follows: John W. Connelly, $140,156 for lost wages and benefits and $280,312 for emotional distress and mental anguish; William R. Barrett, $112,785 for lost wages and benefits and $225,570 for emotional distress and mental anguish; Paul L. Wade, Jr., $169,036 for lost wages and benefits and $280,312 for emotional distress and mental anguish; and Melvin M. Wedermyer, $106,743 for lost wages and benefits.

Upon consideration of the plaintiffs' motion for attorneys fees pursuant to 42 U.S.C. § 1988 (1994), the trial court ruled that the State of Kansas was not a "person" for purposes of 42 U.S.C. § 1983, such that the jury verdicts for violation of civil rights could not stand and attorney fees could not be allowed. The trial court still affirmed the judgment amounts in their entirely, opining that the jury would have calculated the damages the same whether or not the § 1983 action was included in the instructions.

The State appealed and raises these contentions:

Issue I: Whether a cause of action for retaliatory discharge on public policy grounds exists for highway patrol officers who complained within the chain of command about an unpopular policy adopted by the head of the highway patrol.

Issue II: The judgments in favor of plaintiffs Connelly, Wade, and Wedermyer should be reversed because the Kansas Civil Service Act Whistleblower Statute, K.S.A. 75-2973, provides these plaintiffs with their exclusive state law remedy.

Issue III: Because the plaintiffs before the Civil Service Board litigated and lost their contention that the plaintiffs' lieutenant positions were eliminated in retaliation for plaintiffs' verbalized opposition to the "leave the farmers alone" policy, summary judgment should have been granted to the defendant under the doctrine of collateral estoppel.

The plaintiffs cross-appeal and raise these contentions:

Issue I: Did the district court err in overturning the jury's verdict in favor of plaintiffs on their First Amendment cause of action?

Issue II: If this court finds the Kansas Civil Service Act precludes plaintiffs' retaliatory discharge tort claims, did the Civil Service

Board and the district court err in rejecting plaintiffs' administrative appeal of their dismissals?

*Prager*, 271 Kan. 1, was filed after this appeal was argued and the parties' Supreme Court Rule 6.09(b) (2000 Kan. Ct. R. Annot. 41) responses were predictable.

The plaintiffs argued the *Prager* decision should not affect the outcome of this appeal. They contend the standard of review differs, the State voluntarily waived sovereign immunity here, both the KCSB and district court held K.S.A. 75-2973 did not protect the plaintiffs, and the facts in this case and *Prager* were significantly different.

The State embraced *Prager* as substantiating the argument of its second issue that K.S.A. 75-2973 provided the covered troopers with an adequate, exclusive remedy for any claimed retaliation for whistleblowing. And, in addition, the State contended *Prager* correctly applied the rule of *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71, 105 L. Ed. 2d 45, 109 S. Ct. 2304 (1989), that the State is not a "person" within the meaning of 42 U.S.C. § 1983 and the verdict for alleged violation of First Amendment rights was properly set aside by the trial court. The State further argued that *Prager* provided no authority that sovereign immunity can be waived in § 1983 actions and *Prager* supported the trial court's ruling on this issue.

*Standards of review*

There are different standards of review which apply to decisions of administrative bodies, motions for directed verdict, objections to instructions, constructions of statutes, and matters of law. Each will be enumerated and applied to the various issues raised.

*Application of the decisions of Alden v. Maine, Prager v. Kansas Dept. of Revenue, Goldbarth v. Kansas Board of Regents, and Schall v. Wichita State University to the issues raised by this appeal and cross-appeal.*

We first consider the State's second issue in its appeal which we believe our holding in *Prager* directly answers.

DOES K.S.A. 75-2973 PROVIDE AN ADEQUATE, EXCLU-SIVE REMEDY TO A CLAIMED COMMON-LAW WHISTLE-BLOWING RETALIATORY DISCHARGE CAUSE OF ACTION SO THAT THE JUDGMENTS IN FAVOR OF PLAINTIFFS CONNELLY, WADE, AND WEDERMYER MUST BE REVERSED?

This issue was preserved by motions for summary judgment which were denied and a motion for directed verdict which was denied. It now comes before us as a question of law, for which our review is unlimited. *T.S.I. Holdings, Inc. v. Jenkins*, 260 Kan. 703, 716, 924 P.2d 1239 (1996).

The argument that the State makes here applies only to plaintiffs Connelly, Wade, and Wedermyer, who were in classified civil service and had permanent status, and, thus, fall under the precise wording of K.S.A. 75-2973(d), which reads in applicable part:

"Any officer or employee who is in the classified civil service and has permanent status under the Kansas civil service act may appeal to the state civil service board whenever the officer or employee alleges that the disciplinary action was taken against the officer or employee in violation of this act . . . ."

Plaintiff Barrett, as the KCSB specifically found, did not have permanent status in his position and does not fall under the protection or the restrictions of K.S.A. 75-2973. The State does not attempt to make its exclusive remedy argument applicable to him and we agree.

The State's argument is that because the common-law tort of retaliatory discharge for whistleblowing actions was not intended to be available for civil service employees covered by K.S.A. 75-2973(d) and the statutory remedies are more than adequate, Connelly, Wade, and Wedermyer's exclusive remedy is the right to appeal to the KCSB.

The plaintiffs argue that K.S.A. 75-2973 and the proceedings under the Kansas Civil Service Act, K.S.A. 75-2925 *et seq.*, do not provide them with an adequate remedy for the retaliation they suffered at the hands of McCollum, Scott, and the State of Kansas.

The arguments of the State in this appeal and the responses of the plaintiffs had actually been raised and briefed at the time we issued our show cause order in *Prager*, where we asked:

" 'Why appellant's appeal as to his issue raising a common-law "whistleblowing" claim for relief should not be dismissed under the alternative remedies doctrine because K.S.A. 75-2973 provides a classified civil service employee an adequate alternative remedy and thereby precludes the common-law remedy.' " 271 Kan. at 9-10.

The arguments and contentions raised by the State here are similar to those raised by the State in *Prager* and, likewise, the responses and the disclaimers made by the plaintiffs here are much like those made by the state employee in the *Prager* case. Although the plaintiffs here argue that the finding of the KCSB, which was affirmed by the district court, that K.S.A. 75-2973 did not apply required a finding that no adequate remedy existed here, the State more convincingly argues that the *Prager* decision is directly applicable and is determinative of this issue. We agree with the State.

We will not repeat here our wording from *Prager* which quoted K.S.A. 75-2973(b), 271 Kan. 45, and discussed *Palmer v. Brown*, 242 Kan. 893, Syl. ¶¶ 1-3, 752 P.2d 685 (1988), and *Crandon v. State*, 257 Kan. 727, 897 P.2d 92 (1995), *cert. denied* 506 U.S. 1113 (1996). 271 Kan. at 46. However, we will quote the discussion in *Prager* of the ultimate question as raised by our decision in *Flenker v. Willamette Industries, Inc.*, 266 Kan. 198, 202-03, 967 P.2d 295 (1998):

" 'The alternative remedies doctrine at issue here, referenced sometimes as preclusion, is a substitution of law concept. Under the alternative remedies doctrine, a state and federal statute would be substituted for a state retaliation claim if the substituted statute provides an adequate remedy. *Bair v. Peck*, 248 Kan. 824, 838, 811 P.2d 1176 (1991).'

"Our reference to *Bair v. Peck* was to the statement therein that '[i]t has long been recognized that no one has a vested right in common-law rules governing negligence actions which would preclude substituting a viable statutory remedy for one available at common law. [Citation omitted.]' 248 Kan. at 838-89.

"We must then focus on the question asked in *Flenker*, which is 'whether the statutory remedy is adequate and thus precludes the common-law remedy.' 266 Kan. at 203.

"*Flenker* involved a certified question: whether the remedy provided by § 11(c) (29 U.S.C. § 660(c) [1994]) of the Occupational Safety and Health Act (OSHA) for employees who allege they have been discharged in retaliation for filing complaints under that statute precludes the filing of a Kansas common-law wrongful discharge claim under Kansas' public policy exception to employment-at-will.

"We ultimately determined that OSHA did not provide an employee an adequate remedy, with our significant finding being that the employee's only OSHA remedy consisted of the right to file a complaint with the Secretary of Labor who then had the sole discretion to bring an action on the employee's behalf. The employee had no appeal rights if the Secretary declined to file the suit. We found this lack of control in the employee and the absolute discretion of the Secretary was 'a significant limitation of the employee's right of redress.' 266 Kan. at 206. We also noted that the Secretary's discretion could be affected by budgetary constraints and political pressure.

"Our *Flenker* opinion noted that under the OSHA statute, an employee only had 30 days from the date of the violation to file a complaint under the act. This short time frame is consistent with K.S.A. 75-2973(d), which requires a complaint to be filed by an employee within 30 days of the violation. This was not deemed by us to be the most critical factor in *Flenker* for, as we have previously stated, the lack of control in the employee was the most significant factor. *Flenker* is clearly distinguishable from our case because here, Prager is in control of his statutory claim, while under the OSHA statute, the employee has no such right.

"The ultimate question for us is whether K.S.A. 75-2973 provides Prager with an adequate remedy.

"K.S.A. 75-2973(d) provides that a classified employee such as Prager, who alleges he was disciplined in violation of the statute, has the right to appeal to the Kansas Civil Service Board. The Kansas Legislature has provided extensive procedures under KAPA to employees such as Prager, which include representation by counsel, filing of pleadings, issuing of subpoenas, discovery, presentation of evidence and arguments in a hearing, reconsideration, and ultimately filing appeals. See K.S.A. 77-501 *et seq.*

"If the Board finds the disciplinary action was unreasonably taken, K.S.A. 75-2973(d) requires the Board to 'modify or reverse the agency's action and order such relief for the employee as the [B]oard considers appropriate.' In addition, the Board may discipline the violator.

"Also weighing in favor of limiting classified civil service employees to the remedies provided by K.S.A. 75-2973(d) is the legislative attempt to balance the various competing interests of the State to encourage whistleblowing while still preventing disruptions of the normal agency disciplinary processes. The legislation appears to be crafted to cover the type of situation we are presented with.

"We recognize that the legislature did not expressly make this remedy exclusive, which weighs against such a finding. *Cf. Van Scoyk v. St. Mary's Assumption Parochial School,* 224 Kan. 304, 305-06, 580 P.2d 1315 (1978). Prager also argues that a finding of exclusiveness would be contrary to *Parker v. Kansas Neurological Institute,* 13 Kan. App. 2d 685, 687-689, 778 P.2d 390, *rev. denied* 245 Kan. 785 (1989). Parker involved a claim of racial discrimination and differs from our case where a specific legislative statute was crafted to cover a specific factual situation.

"State employment comes with benefits, but it is also necessary for the general public good that employees accept limitations that insure a workable system. We

hold that K.S.A. 75-2973 provides a classified civil service employee an adequate remedy for claimed whistleblowing activities, and the dismissal of Prager's purported common-law whistleblowing claim is affirmed, although not for the reasons utilized by the trial court." 271 Kan. at 48-50.

We note that the State argues here that the suggested findings proposed by the plaintiffs in the administrative hearing included remedies that would have been more than adequate had they been granted by the KCSB, but we do not deem that attempt to obtain a recovery should in any manner be construed as an admission that an adequate remedy was available administratively. The troopers did nothing more than rightfully assert their available remedies while still maintaining they were not adequate.

We are equally unimpressed and, in fact, appalled by the troopers' argument that because the make-up of the KCSB consisted of "political appointees of the governor" this somehow made their remedies inadequate. Their brief somewhat retreats from this position by stating they do not question the integrity of the KCSB in this case, but this argument is specious. A more persuasive argument is the limited time to appeal (30 days) under K.S.A. 75-2973(d) which was a factor considered in *Flenker*, 266 Kan. at 206, but which is not a factor here and not a valid reason to change the result we reached in *Prager*.

The troopers also argue that relaxed rules of evidence in administrative appeals restrict their remedies, an argument we do not find persuasive. We are also not convinced by the argument that the scope of review of the rulings of the KCSB under K.S.A. 75-2929h and K.S.A. 77-621 is so limited that it somehow makes the administrative proceedings inadequate.

We reiterate our decision in *Prager* and hold that the Kansas Whistleblower Act, K.S.A. 75-2973, as applied to classified state employees with permanent status, provided Connelly, Wade, and Wedermyer with an adequate exclusive remedy for claimed retaliation for whistleblowing and no common-law remedy exists that they are entitled to pursue. As such, the judgments in the district court rendered on behalf of the plaintiffs Connelly, Wade, and Wedermyer must be reversed unless the decision of the KCSB is

likewise set aside or the trial court erroneously ruled on the § 1983 claim.

With the above holding reached, we need not consider or decide the third issue raised by the State concerning the collateral estoppel effect of the KCSB ruling that the MCIT Lieutenants did not meet their burden of establishing that the decision to eliminate their positions was a retaliatory action. Such an argument might have existed as to the claims of Connelly, Wade, and Wedermyer but can have absolutely no effect on the Barrett claim because of the finding that he is in no way involved in or covered by the KCSB proceedings.

We next turn to the rulings in *Prager* and earlier cases relating to whether the State of Kansas and the Kansas Highway Patrol are "persons" who can be subject to monetary damages under the provisions of 42 U.S.C. § 1983 (1994). This question is intertwined with recent cases wherein sovereign immunity has been reestablished where federal legislation imposed obligations. See *Alden v. Maine*, 527 U.S. 706, 144 L. Ed. 2d 636, 119 S. Ct. 2240 (1999); *Goldbarth v. Kansas Board of Regents*, 269 Kan. 881, 9 P.3d 1251 (2000); *Schall v. Wichita State University*, 269 Kan. 456, 7 P.3d 1144 (2000). In this case, apparently over problems as to how to instruct on qualified immunity, a stipulation was entered into by the parties whose intention and legal effect is of critical importance.

DID THE TRIAL COURT ERR IN OVERTURNING THE JURY'S VERDICT ON THE § 1983 CLAIM AND CAN AND DID THE STATE WAIVE THE FACT IT IS NOT A "PERSON" WITHIN THE MEANING OF 42 U.S.C. § 1983 AND ENTITLED TO SOVEREIGN IMMUNITY AS TO ANY FREE SPEECH CLAIM?

The plaintiffs contend the trial court erred in overturning the jury's verdicts on their First Amendment causes of action and misapplied the stipulation of the parties, which they contend requires judgment against the State on their § 1983 claims and their right to recover attorney fees.

The State argues that neither the State, nor the Highway Patrol is a "person" under § 1983 and that this fact and the State's immunity cannot be waived.

The provisions of 42 U.S.C. § 1983 in issue here provide:

"Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

We said in *Prager*:

"As was stated in *Swinehart v. City of Ottawa*, 24 Kan. App. 2d 272, 275, 943 P.2d 942 (1997), '42 U.S.C. § 1983 is not itself a source of substantive rights, but rather a method for vindicating federal rights elsewhere conferred. [Citations omitted.]' A § 1983 claim has two essential elements: (1) whether the conduct complained of was committed by a person acting under color of state law, and (2) whether this conduct deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States. *Parratt v. Taylor*, 451 U.S. 527, 535, 68 L. Ed. 2d 420, 101 S. Ct. 1908 (1981), *overruled in part on other grounds Daniels v. Williams*, 474 U.S. 327, 330-31, 88 L. Ed. 2d 662, 106 S. Ct. 662 (1986). Both state and federal courts are proper forums for such actions. *Gumbhir v. Kansas State Board of Pharmacy*, 231 Kan. 507, 509, 646 P.2d 1078 (1982), *cert denied* 459 U.S. 1103 (1983)." *Prager*, 271 Kan. at 11-12.

It was held in *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71, 105 L. Ed. 2d 45, 109 S. Ct. 2304 (1989), that states are not "persons" within the meaning of § 1983, and neither are state officials (such as Col. McCollum and Lt. Col. Scott) sued in their official capacity for money damages or other retroactive relief. This result had been previously recognized in Kansas in *Beck v. Kansas Adult Authority*, 241 Kan. 13, 21, 735 P.2d 222 (1987), where we stated:

"We have never held that state agencies were persons under 42 U.S.C. § 1983 for the purpose of suits seeking damages thereunder. The State has consented to suit for damages under the Kansas Tort Claims Act, K.S.A. 75-6101 *et seq.*, but that act does not contain the consent of the State to the filings of actions for damages against it under Section 1983. (The State of Kansas has not waived its sovereign immunity from suits seeking monetary damages under 42 U.S.C. § 1983.) . . . We have carefully considered the issue, and hold that, while the State of Kansas is a person for the purposes of Section 1983 actions wherein injunctive relief is sought, the State has not waived its sovereign immunity from suits seeking damages under that section."

For similar holdings subsequent to *Will,* see *Americare Properties, Inc. v. Whiteman,* 257 Kan. 30, 51-52, 891 P.2d 336 (1995) (Kansas Department of Social and Rehabilitation Services is not a person for purposes of 42 U.S.C. § 1983, absent a claim for prospective injunctive relief); *Lindenman v. Umscheid,* 255 Kan. 610, 634, 875 P.2d 964 (1994) (Kansas Department of Health and Environment is not a person for purpose of a 42 U.S.C. § 1983 claim where monetary relief is sought).

The plaintiffs now agree that the rule in *Will* is applicable but rely solely on the argument that the stipulation entered into between the parties waived the "person" requirement of 42 U.S.C. § 1983 and the sovereign immunity of the State of Kansas. They argue that neither party intended the stipulation to deprive the plaintiffs of their constitutional causes of action. But, the law in place clearly gave them no 42 U.S.C. § 1983 cause of action against either the State or the supervisors of the Patrol in their official capacity.

It is not helpful to try to reconstruct after the fact statements of either side to this appeal. We are left with the language of the stipulation to consider. The legal question upon which our review is unlimited is whether a waiver of an absolute defense on the part of the State occurred under the facts of this case.

We have previously set forth the stipulation in full, but we now look to the legal effect of its precise language. Paragraph 1, which states "at all times herein material, Lonnie McCollum and Terry Scott were acting within the scope of their authority as employees of the State of Kansas for all purposes relevant to this lawsuit," has no application to a waiver argument but does establish that the acts complained of were within the authority of the actors.

The second paragraph states that McCollum's and Scott's acts "relating to the elimination of plaintiffs lieutenants position in the MCIT were undertaken in their official capacities" (which would clearly not be a basis for liability on either their part or the State) but concludes "and their actions are the responsibility of and attributed to the State of Kansas."

To be responsible means to be "legally or ethically accountable," "answerable." Webster's II New Riverside University Dictionary

1001 (1984). For something to be "attributed" means "to allot," "to assign to a cause or source." Webster's II New Riverside University Dictionary 137 (1984). A strict construction of the stipulation language would not result in the waiver of any defense or immunity, but in the stipulation the State appears to be assuming responsibility for McCollum's and Scott's actions.

The last sentence of the stipulation which states that McCollum and Scott were "dismissed from this case, in their individual capacity" clearly means they are no longer individually parties to the case. The plaintiffs ask to reinstate their cause of action against McCollum and Scott individually if we hold that the "person" defense cannot be waived.

The plaintiffs offer no persuasive authority for their argument that counsel can waive the absence of the basis requirement for liability of a State—that it is a "person" under 42 U.S.C. § 1983. The State is only a "person" for purposes of injunctive relief, see the often quoted footnote 10 of *Will*, 491 U.S. at 71; *Prager*, 271 Kan. at 12, but this does not make the State or any of its agencies a "person" where monetary damages are claimed. See *Prager*, 271 Kan. at 24-25.

The better reasoning is that a State cannot waive any defect in a plaintiff's claim because a State has no right to change the definition of "person." Although in the main critical of the *Will* decision, this rule was recognized by Burnham and Fayz, *The State as a Non-Person Under Section 1983: Some Comments on* Will *and Suggestions For the Future*, 70 Oregon L. Rev. 1, 28 (1991), where it is stated: "[U]nder the Court's holding in *Will*, a state cannot be sued under section 1983 even if it consents because it is powerless to rewrite the congressional definition of 'person'."

The manner in which we should view federal causes of action in state courts was specifically stated in *Howlett v. Rose*, 496 U.S. 356, 375-76, 110 L. Ed. 2d 332, 110 S. Ct. 2430 (1990):

"The elements of, and the defenses to, a federal cause of action are defined by federal law. See, *e.g.*, *Monessen Southwestern R. Co. v. Morgan*, 486 U.S. 330, 335, (1988), *Chesapeake & Ohio R. Co. v. Kuhn*, 284 U.S. 44, 46-47 (1931). A State may not, by statute or common law, create a cause of action under § 1983 against an entity whom Congress has not subjected to liability. *Moor v. County of*

*Alameda*, 411 U.S. 693, 698-710 (1973). Since this Court has construed the word 'person' in § 1983 to exclude States, neither a federal court nor a state court may entertain a § 1983 action against such a defendant."

In a similar vein this federal rule was restated in *Arizonans For Official English v. Arizona*, 520 U.S. 43, 69, 137 L. Ed. 2d 170, 117 S. Ct. 1055 (1997), in this manner:

"We have held, however, that § 1983 actions do not lie against a State. *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989). Thus, the claim for relief the Ninth Circuit found sufficient to overcome mootness was nonexistent. The barrier was not, as the Ninth Circuit supposed, Eleventh Amendment immunity, which the State could waive. The stopper was that § 1983 creates no remedy against a State.

. . . .

"State officers in their official capacities, like States themselves, are not amendable to suit for damages under § 1983. See *Will v. Michigan Dept. of State Police*, 491 U.S. at 71, and n.10. State officers are subject to § 1983 liability for damages in their personal capacities, however, even when the conduct in question relates to their official duties. *Hafer v. Melo*, 502 U.S. 21, 25-31 (1991)." 520 U.S. at 69 n.24.

We will not restate its facts in detail but similar issues were involved in *Goldbarth*, 269 Kan. at 887, where claims were made against Wichita State University administrators Bowman and Patton and the following was stated:

"First, Goldbarth acknowledges in his brief that the 42 U.S.C. § 1983 claims only apply to Bowman and Patton in their individual capacities. His official capacity claims fail. They are redundant with the claims against WSU and the Regents. See *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71, 105 L. Ed. 2d 45, 109 S. Ct. 2304 (1989).

"In addition, § 1983 is a remedy available to address the misconduct of *persons* acting under color of state law. See *Hafer v. Melo*, 502 U.S. 21, 27, 116 L. Ed. 2d 301, 112 S. Ct. 358 (1991). Goldbarth's § 1983 claims against WSU and the Regents also fail. WSU and the Regents are state agencies. See K.S.A. 74-3201 *et seq.* (the Regents); K.S.A. 76-3a01 *et seq.* (WSU); K.S.A. 76-711(a); K.S.A. 76-712. A state agency is not a 'person' under § 1983. See *Will*, 491 U.S. at 64; *Beck v. Kansas Adult Authority*, 241 Kan. 13, Syl. ¶ 1, 735 P.2d 222 (1987)."

While *Goldbarth* does not speak of waiver, it is clear that the State cannot become a person under a 42 U.S.C. § 1983 claim where monetary damages are claimed. And, the stipulation entered into by the parties, for whatever reason, cannot as a matter of law,

make the State of Kansas legally responsible for the actions of McCollum and Scott for a 42 U.S.C. § 1983 free speech violation.

Recent decisions have focused in a different manner on the interaction of federal causes of action brought in state courts and the right of states to claim what is sometimes termed Eleventh Amendment immunity or, as better stated, sovereign immunity.

As we initially said in *Schall*, "[h]istorically, courts have held that the Eleventh Amendment does *not* apply to suits brought in state courts." 269 Kan. at 462. We pointed out in *Schall* that this had been the ruling in *Will*, 491 U.S. at 63-64, *Americare Properties, Inc. v. Whiteman*, 257 Kan. 30, 51, 891 P.2d 336 (1995), and other cases, but then acknowledged a change in this line of decisions when we stated:

"The United State Supreme Court in *Alden v. Maine*, 527 U.S. 706, 144 L. Ed. 2d 636, 119 S. Ct. 2240 (1999), however, recently allowed the State of Maine to assert immunity even though the action was brought in state court. In *Alden*, the plaintiffs, a group of probation officers, filed suit against the State of Maine, alleging that the State had violated the overtime provisions of the Fair Labor Standards Act (FLSA). The suit was originally brought in federal court, but when it was dismissed, it was re-filed in state court in Maine.

. . . .

"The *Alden* Court therefore held that 'the powers delegated to Congress under Article I of the United States Constitution do not include the power to subject nonconsenting States to private suits for damages in state courts.' 527 U.S. at 712." 269 Kan. at 463-65.

The conclusion of the immunity discussion in *Schall* was that "Kansas has sovereign immunity from claims by individuals based on federal law even when they are brought in state court." 269 Kan at 466.

The *Schall* opinion goes on to state with reference to how immunity may be relinquished:

"Courts have set forth three ways that state immunity may be relinquished: (1) where the state has consented to suit; (2) where the application of *Ex parte Young*, 209 U.S. 123, 52 L. Ed. 714, 28 S. Ct. 441 (1908), and its progeny is appropriate; or (3) where Congress has abrogated the state's immunity. *Nelson v. Miller*, 170 F.3d 641, 646 (6th Cir. 1999). Kansas has not consented to be sued on either the ADA or FMLA claims in this matter and *Ex parte Young* is not applicable." 269 Kan. at 466.

It is clear from what we have heretofore stated as to the "person" requirement that Congress has not abrogated State immunity. The *Ex parte Young* application which we discussed in detail in *Prager* is not applicable here.

This leaves for our consideration only whether the State has consented to a 42 U.S.C. § 1983 suit, and we plainly hold that it has not done so. We have previously expressly said so in *Beck*, 241 Kan. at 21:

"The State has consented to suit for damages under the Kansas Tort Claims Act, K.S.A. 75-6101 *et seq.*, but that act does not contain the consent of the State to the filing of actions for damages against it under section 1983. (The State of Kansas has not waived its sovereign immunity from suits seeking monetary damages under 42 U.S.C. § 1983.)"

The consent to suit or waiver of sovereign immunity must be based on State action which we deem to be legislative enactments expressing the will of elected officials and cannot be based on acts of agents. We hold the State has not waived its "person" defense or its sovereign immunity and the trial court properly granted judgment in favor of the State on the plaintiffs' First Amendment and 42 U.S.C. § 1983 claims.

We adhere to our statement in *Goldbarth*, where it was argued that sovereign immunity was not raised in the district court and was therefore waived: "He [Goldbarth] fails to recognize that immunity is an issue of jurisdiction, and, as such, we are compelled to address it. [Citations omitted.]" 269 Kan. at 894. The trial court did not improperly reach this issue when attorney fees were requested under 42 U.S.C. § 1983.

The plaintiffs contend in the alternative that if we hold their 42 U.S.C. § 1983 against the State was barred we should order the stipulation that McCollum and Scott be dismissed rescinded as being based on a mutual mistake which they contend is authorized in *Morrison v. Hurst Drilling Co.*, 212 Kan. 706, 512 P.2d 438 (1973).

The State contends this issue should not be considered because "issues not raised before the trial court will not be heard for the first time on appeal." *Ripley v. Tolbert*, 260 Kan. 491, Syl. ¶ 6, 921

P.2d 1210 (1996). The State alternatively argues there was no mutual mistake so the doctrine is not applicable here.

We said in *Hardesty v. Coastal Mart, Inc.*, 259 Kan. 645, 650, 915 P.2d 41 (1996):

"While the general rule is that trial courts are bound by stipulations of the litigants, courts are warranted in relieving parties from stipulations improvidently or mistakenly made. *State v. Craven*, 215 Kan. 546, 548, 527 P.2d 1003 (1974). In *Craven*, we summarized the circumstances justifying such relief:

" ' "[A] trial court may, in the exercise of judicial discretion, upon proper cause shown, relieve a party from a stipulation entered into in the course of a judicial proceeding when it appears that such relief is necessary to prevent manifest injustice to the parties seeking it, and that the granting of such relief will not place the adverse party at any disadvantage by reason of having acted in reliance upon the stipulation. It has thus been held that a stipulation should only be set aside after placing the parties in approximately the same positions in which they were or in positions of substantially equal advantage. And on appeal, the determination of the trial court as to the propriety of granting such relief will not ordinarily be interfered with, except where a manifest abuse of discretion is disclosed . . . ." ' 215 Kan. at 548 (quoting 73 Am. Jur. 2d, Stipulations § 13)."

The time for this argument and contention to be made was clearly in the trial court at the time of the ruling regarding the 42 U.S.C. § 1983 judgment, and we fail to see how we could in any manner "place the parties in approximately the same positions" if it were now considered.

We will not order that the stipulation be rescinded or that McCollum and Scott be reinstated as defendants individually.

With the results we have now reached, we must next consider the plaintiffs' (Connelly, Wade, and Wedermyer) contention regarding the second issue of their cross-appeal.

*Having held that the Kansas Civil Service Act and more particularly K.S.A. 75-2973 precludes plaintiffs' common-law retaliatory discharge tort claims, did the Kansas Civil Service Board and the district court err in rejecting plaintiffs' administrative appeal of their dismissal?*

In *Sanstra v. Kansas Highway Patrol*, 15 Kan. App. 2d 148, 149, 804 P.2d 1009, *rev. denied* 248 Kan. 996 (1991), a decision of the KCSB was appealed and it was stated:

"Our scope of review of an administrative decision is governed by K.S.A. 77-621. K.S.A. 75-2929h provides that orders of the civil service board are subject to judicial review in accordance wit the Act for Judicial Review and Civil Enforcement of Agency Actions, K.S.A. 77-601 *et seq.*"

In a similar case, we said in *Kansas Dept. of Transportation v. Humphreys*, 266 Kan. 179, 182, 967 P.2d 759 (1998), that when a party disputes the district court's interpretation of a statute, the issue raised is a question of law upon which our review is unlimited. The applicable provisions of K.S.A. 77-621 which are state:

"(a) Except to the extent that this act or another statute provides otherwise:
(1) The burden of proving the invalidity of agency action is on the party asserting invalidity; and
(2) the validity of agency action shall be determined in accordance with the standards of judicial review provided in this section as applied to the agency action at the time it was taken.
"(b) The court shall make a separate and distinct ruling on each material issue on which the court's decision is based.
"(c) The court shall grant relief only if it determines any one or more of the following:
. . . . .
(3) the agency had not decided an issue requiring resolution;
(4) the agency has erroneously interpreted or applied the law;
. . . .
(7) the agency action is based on a determination of fact, made or implied by the agency, that is not supported by evidence that is substantial when viewed in light of the record as a whole, which includes the agency record for judicial review, supplemented by any additional evidence received by the court under this act; or
(8) the agency action is otherwise unreasonable, arbitrary or capricious.
"(d) In making the foregoing determinations, due account shall be taken by the court of the rule of harmless error."

In reviewing a district court's decision reviewing an agency action, the appellate court must first determine whether the district court observed the requirements and restrictions placed upon it and then make the same review of the administrative agency's action as does the district court. *Hickman Trust v. City of Clay Center*, 266 Kan. 1022, 1036, 974 P.2d 584 (1999) (citing *Board of Johnson County Comm'rs v. J.A. Peterson Co.*, 239 Kan. 112, 114, 716 P.2d 188 [1986]).

The appellate court must accept as true the evidence and all inferences to be drawn therefrom which support or tend to support the findings of the factfinder. We are to disregard any conflicting evidence or other inferences. *Reed v. Kansas Racing Comm'n*, 253 Kan. 602, 609-10, 860 P.2d 684 (1993).

A rebuttable presumption of validity attaches to all actions of an administrative agency, and the burden of proving arbitrary and capricious conduct lies with the party challenging the agency's actions. *City of Wichita v. Public Employee Relations Bd.*, 259 Kan. 628, 630, 913 P.2d 137 (1996); *Marriott Corp. v. Board of Johnson County Comm'rs*, 25 Kan. App. 2d 840, 842, 972 P.2d 793 (1999).

The trial court, somewhat summarily, affirmed the findings and decision of the KCSB by essentially following K.S.A. 77-621 and held:

"K.S.A. § 77-621(c) (Supp. 1995) limits the Court's ability to grant relief in a judicial review action. The Plaintiffs have the burden of proving the findings of the Civil Service Board are invalid. K.S.A. § 77-621(a)(1). K.S.A. § 75-2973 (Supp. 1995) grants the Board jurisdiction to hear the Plaintiffs' 'whistle-blower' appeal. The Board used K.S.A. § 75-2973 to find the Plaintiffs' whistle-blowing claim is invalid. The Court does not find that K.S.A. § 75-2973 is unconstitutional on its face or as applied by the Board; nor did the Board erroneously interpret or apply K.S.A. § 75-2973. K.S.A. § 75-2973(c)(1) and (4). The Board followed prescribed procedure for hearing the Plaintiffs' appeal and the decision of the Board is supported by substantial evidence. K.S.A. § 75-2973(c)(5) and (7). Finally, the Court does not find the Board's decision to be 'unreasonable, arbitrary or capricious.' K.S.A. § 75-2973(c)(8). For these reasons, the findings of the Civil Service Board are sustained for purposes of the Plaintiffs' whistle blowing claim in Case No. 95-311."

The plaintiffs point to K.S.A. 77-621(c)(3), (4), (7), and (8) as being applicable. They contend the KCSB did not interpret K.S.A. 75-2973 as to their circumstances by determining it did not cover internal whistleblowing and that the layoffs did not constitute disciplinary action. They further make the statement that if we hold K.S.A. 75-2973 preempts plaintiffs' common-law retaliatory discharge causes of action we would be holding that the KCSB erroneously interpreted the law. These arguments, without any cited authority, are not persuasive. The only contention which does have merit is that regarding internal whisleblowing, but for reasons we

will hereafter set forth, that is not sufficient to justify or require reversal of the KCSB decision.

The State more convincingly argues that a ruling in its favor on whether K.S.A. 75-2973 constitutes the plaintiffs' exclusive remedy does not require reversal of the KCSB interpretation of that statute. We have held that as to classified state employees with permanent status the only remedy is that under K.S.A. 75-2973, and this remedy is exactly what the KCSB considered.

Although only a paucity of reasons have been raised as to why to reverse the trial court and the KCSB, we are obligated to make the same review of the administrative agency's actions as does the district court.

Most importantly, in its conclusions of law, the KCSB held in paragraph 8 that the plaintiffs did not meet their burden of proof that the decision to eliminate the four MCI Lieutenant positions was a retaliatory action against any of them. We have always held that when a negative finding is made the party challenging that finding must prove arbitrary disregard of undisputed evidence or some extrinsic consideration such as bias, passion, or prejudice because the negative finding signifies the failure of the party upon whom the burden of proof was placed to sustain it. *Thomason v. Stout*, 267 Kan. 234, 238, 978 P.2d 918 (1999). No reason has been shown why this negative finding was not properly made by the KCSB.

As we will consider in detail in the last issue, we believe the KCSB conclusion that internal whistleblowing cannot be the basis for a claim under the whistleblower statute or under a common-law claim of whistleblowing is not correct, but this is not material as to the KCSB conclusions of law because it specifically held: "Even if internal whistleblowing can be the basis of a claim under the whistleblowers' statute, the respondent agency's decision to eliminate the appellants' positions was not made in retaliation for any internal complaints made by the appellants. See discussion in text supra." The discussion in the text supports this statement.

The KCSB made findings of fact consisting of 159 paragraphs after a week-long hearing, and we are pointed to none that are not

supported by substantial competent evidence. We hold that the requirements of K.S.A. 77-621(c)(7) were fully satisfied.

Without any specific reason being given other than the legal argument we have rejected, we hold the decision of the KCSB as affirmed by the district court is required to be affirmed on appeal.

The resolution of the foregoing issues still leaves for consideration the question of whether the jury verdict in favor of plaintiff Barrett for his complaints concerning the failure of the MCIT to enforce state laws and allow overloaded trucks to drive on the Kansas highways was proper. This question does not involve plaintiffs Connelly, Wade, and Wedermyer whose exclusive remedy has been determined to be under K.S.A. 75-2973(d).

*Does a cause of action for retaliatory discharge on public policy grounds exist for highway patrol trooper Barrett who a jury found had his position eliminated in retaliation for complaining that state laws concerning overweight trucks on highways were deliberately not being enforced?*

The State of Kansas suggests our standard of review of this issue is limited to considering it as a question of law over which our review is unlimited. *Hackler v. U.S.D. No. 500*, 245 Kan. 295, 297, 777 P.2d 839 (1989). The plaintiff argues that whether viewed on appeal as a denial of defendant's summary judgment motion or motion for directed verdict all facts and inference reasonably drawn from the evidence should be resolved against the party seeking the ruling and the issue should be submitted to the jury. *Moon v. City of Lawrence*, 267 Kan. 720, 726-27, 982 P.2d 388 (1999); *Simon v. National Farmers Organization, Inc.*, 250 Kan. 676, 683, 829 P.2d 884 (1992). The plaintiff agrees that to the extent a question of law arises our standard of review is de novo. *Kansas Bd. of Regents v. Skinner*, 267 Kan. 808, 811, 987 P.2d 1096 (1999).

The State's argument, as we understand it, does not question the good faith of the plaintiff or his concern over the order to "leave the farmers alone" but contends plaintiff Barrett was not entitled to have his complaint submitted to the jury because he made his complaint only through the chain of command within the Patrol and did not complain to external sources until after his position

had been eliminated in what was claimed to be a budget-necessitated, money-saving reorganization. This appears to present to us the legal question of whether under the right circumstances we would recognize in Kansas a claim for what has been called "internal whistleblowing." This is a question of law over which we have plenary review. *Hamilton v. State Farm Fire & Cas. Co.*, 263 Kan. 875, 879, 953 P.2d 1027 (1998).

The common-law tort of retaliatory-discharge-based whistleblowing activity was first recognized in Kansas in *Palmer v. Brown*, 242 Kan. 893, 752 P.2d 685 (1988). Palmer was a medical technician who contended her at-will employment was terminated for transmitting information to unspecified authorities that her coworkers or employer were billing Medicaid for lab work which had not been performed.

Our opinion was broadly written and looked to the many exceptions to the right to terminate at-will employments, such as exists in collective bargaining agreements, under K.S.A. 75-2973(b)(1) as to certain state employees, certain statutory protections, and for retaliation for filing a workers compensation claim. See *Murphy v. City of Topeka*, 6 Kan. App. 2d 488, 630 P.2d 186 (1981). We further discussed the desirability of promoting a public policy of the reporting of crimes and then stated:

"Public policy requires that citizens in a democracy be protected from reprisal for performing their civil duty of reporting infractions of rules, regulations, or the law pertaining to public health, safety, and the general welfare. Thus, we have no hesitation in holding termination of an employee in retaliation for the good faith reporting of a serious infraction of such rules, regulations, or the law by a coworker or an employer *to either company management or law enforcement officials* (whistle-blowing) is an actionable tort. To maintain such action, an employee has the burden of proving by clear and convincing evidence, under the facts of the case, a reasonably prudent person would have concluded the employee's coworker or employer was engaged in activities in violation of rules, regulations, or the law pertaining to public health, safety, and the general welfare; the employer had knowledge of the employee's reporting of such violation prior to discharge of the employee; and the employee was discharged in retaliation of making the report. However, the whistle-blowing must have been done out of a good faith concern over the wrongful activity reported rather than from a corrupt motive such as malice, spite, jealousy or personal gain." (Emphasis added.) *Palmer*, 242 Kan. at 900.

The plaintiffs point to all of the complaints each of them made (which inure to the remaining plaintiff Barrett as to his common-law retaliatory discharge claim) and contend that directing them not to enforce laws which were designed to protect the public from unsafe, overweight trucks was violative of their oath, in violation of state criminal statutes, and clearly pertained to public health, safety, and the general welfare. The complaints about the order to "leave the farmers alone," while made through the ranks of the paramilitary structure of the Patrol, were made to individuals who were in fact "law enforcement officials."

The State argues that this is not "snitching" as was recognized in *Larson v. Ruskowitz*, 252 Kan. 963, 968, 850 P.2d 253 (1993), where we discussed the difference between retaliatory discharge actions based on whistleblowing and those based on a violation of a public employee's right of freedom of speech by pointing to *Riddle v. City of Ottawa*, 12 Kan. App. 2d 714, 754 P.2d 465, *rev. denied* 243 Kan. 780 (1988). We noted that *Larson* differed from *Palmer*, by stating:

"The evidence in this case does not fit the scenario that the employer 'was engaged in conduct in violation of rules, regulations, or the law pertaining to public health, safety, and the general welfare,' or that the employees were discharged for reporting the violation as in *Palmer v. Brown*, 242 Kan. 893, 752 P.2d 685 (1988). No claim was made that Ruskowitz misappropriated funds or committed any criminal act. Laws, rules, or regulations concerning public health, safety, or general welfare are not involved in the claims herein. In short, this is not a whistle-blowing case." 252 Kan. at 974.

The State's reliance on *Larson* and *Riddle* is misplaced.

The distinction between internal and external whistleblowing was a primary factor in *Moyer v. Allen Freight Lines, Inc.*, 20 Kan. App. 2d 203, 885 P.2d 391 (1994). It should be noted that a petition and cross-petition for review in the case had been granted by our court when the case was settled by the parties and the appeals were dismissed. In any event, while *Moyer* purports to follow *Palmer*, the concurring and dissenting opinions suggest that language in *Palmer* concerning in-house or internal whistleblowing is mere dicta because the complaints of the medical technician were to "outside authorities." 20 Kan. App. 2d at 212-17.

The facts in *Moyer* were as follows: Kay Moyer worked as a driver for Allen. Following termination of her employment for a claimed reduction in the workforce, she sued for retaliatory discharge, contending she had made the following complaints to Allen's management:

"(1) that drivers were repeatedly required to work excessive overtime, sometimes up to 84 hours per week; (2) that her truck's brake lines froze; (3) that on numerous occasions the tires on her truck were flat; (4) that she was told to continue to drive her truck after the power steering pump had failed; and (5) that someone pulled a safety pin used to secure the trailer to her truck. Kay also testified she had complained to a federal Department of Transportation (DOT) inspector of broken equipment which could cause her truck brakes to lock up or freeze." 20 Kan. App. 2d at 206.

The Court of Appeals concluded the mentioning of equipment failure to a DOT inspector while her truck was being inspected did not rise to the level of reporting to an outside agency a serious infraction of a rule, regulation, or law affecting public health, safety, or general welfare, but the majority held: "Nevertheless, *Palmer* does not require an employee to report the serious infraction to an outside agency. On the contrary, an employee may report a serious infraction of a rule, regulation or law *to either company management or law enforcement officials*. 242 Kan. at 900." *Moyer,* 20 Kan. App. 2d at 208. It is thus apparent the judgment was being upheld based on internal whistleblowing only. There were other issues in *Moyer* as to Kay's husband's claimed causes of action which the Court of Appeals resolved in Allen's favor.

Judge Lewis reluctantly concurred with the majority opinion in *Moyer* because he believed *Palmer* allowed the claim of retaliatory discharge for whistleblowing based on reporting in-house to company management, although he personally disagreed with the *Palmer* language that whistleblowing may take place if an infraction is reported to company management. His concurring opinion stated:

" 'Whistle-blowing' has traditionally been viewed as an act in which the reporting party reports illegal or unsafe practices to an outstanding enforcement agency. It is justified by the theory that such reports favor public policy, safety, and well-being and should not be punished. It is difficult to see the same benefit to the public when the complaints do not reach anyone outside of the business for which the 'whistle-blower' works.

"I view the extension of the tort of 'whistle-blowing' to in-house complaints as illogical. It appears to me to expand this tort far beyond what it was ever intended to be." 20 Kan. App. 2d at 213.

Chief Judge Briscoe concurred with the reversal in *Moyer* as to Kay's husband's claim but dissented as to Kay's claim based on internal whistleblowing. After first agreeing that the conversation with the DOT inspector was not whistleblowing and the cause of action was recognized only for the internal complaints, she noted the facts of *Palmer*, pointed out that many of the decisions relied on therein were for external whistleblowing, set forth the holding in *Palmer* quoted in this opinion, and then said:

"In *Palmer*, the employee reported the alleged fraudulent activity to 'unspecified authorities.' Clearly, from the factual background provided in the opinion, the report was made to outside authorities and not to her immediate employer or company management. The portion of the holding in *Palmer* which appears to recognize internal whistle-blowing as a basis for a wrongful discharge action exceeds the factual basis of the case and is mere dicta. Further, if the court intended to permit recovery for internal whistle-blowing to an immediate employer, it would not have required a showing by the employee that the employer had knowledge of the employee's reporting prior to the discharge in order to maintain an action for whistle-blowing. If internal whistle-blowing to an immediate employer was contemplated by the court, the employer would be the entity receiving the report of alleged violation of rules, regulations, or the law and would, therefore, have knowledge of the employee reporting the alleged violation." 20 Kan. App. 2d 216.

The dissent then cited to the Illinois cases of *Zaniecki v. P.A. Bergner & Co.*, 143 Ill. App. 3d 668, 493 N.E.2d 419 (1986), and *Palmateer v. International Harvester Co.*, 85 Ill. 2d 124, 421 N.E.2d 876 (1981), as holdings where internal reporting was insufficient to support a whistleblowing claim. The dissent concluded with the inquiry which we are now required to answer: "[w]hether our Supreme Court would expand whistle-blowing protection to internal reporting or would follow the rationale of *Zaniecki* remains to be seen." 20 Kan. App. 2d at 217.

The State suggests we should follow the reasoning of the Missouri case of *Faust v. Ryder Commercial Leasing & Serv.*, 954 S.W.2d 383 (Mo. App. 1997), *reh. denied* September 30, 1997. Faust privately confronted his manager with his belief that the

manager and his superior were stealing from the company and threatened to expose them to corporate officials if the stealing did not stop. Faust was subsequently limited in his job and privileges were taken away and he eventually resigned. Although recognizing that a wrongful discharge claim may exist where there is a clear mandate of public policy, the Missouri Court of Appeals held a claim was not stated here because,

"to succeed on a claim under the public-policy-whistleblower exception, plaintiff must not only plead, submit, and prove to the trier of fact that his or her discharge was directly and exclusively caused by his or her whistleblowing but in addition, that this 'whistleblowing' actually occurred in that he or she reported the alleged criminal wrongdoing to the proper authorities which, as we hold here, does not include the wrongdoer." 954 S.W.2d at 391.

The plaintiff trooper relies on *Palmer* and the majority holding of *Moyer*, and contends internal whistleblowing was deemed actionable conduct by the following federal cases interpreting Kansas law of retaliatory discharge. *White v. General Motors Corp., Inc.* 908 F.2d 669, 671-72 (10th Cir. 1990); *Lierz v. Coca Cola Enterprises, Inc.* 36 F. Supp. 2d 1295, 1298-1302 (D. Kan. 1999); *Ali v. Douglas Cable Communications*, 929 F. Supp. 1362, 1388-89 (D. Kan. 1996). These federal cases in the main follow the broad language of *Palmer*, but none pointed out its limitation as did the dissent in *Moyer*.

There are innumerable cases on this issue in other jurisdictions and many are fact sensitive. Some are based on state and federal statutes. For an example, the Minnesota case of *Donahue v. Schwegman Lundberg Woesner*, 586 N.W.2d 811 (Minn. App. 1998), involved a complaint of improper billing of services in a law firm. This was not found to constitute whistleblowing. The court stated that "mere mention of a suspected violation already acknowledged by one's employer does not constitute a 'report' under the whistleblower statute. [Citations omitted.]" 586 N.W.2d at 813-14.

In surveying the California law, the federal district court in *Aviles v. McKenzie*, 1992 WL 715248 (N.D. Cal.), stated that internal whistleblowers are within the public policy protection for at-will employees. In discussing their protection, the court stated: "One

such public policy is the need to insure that employees are not terminated for opposing unsafe, illegal, or unethical practices on the part of their employers. [Citation omitted.]" *Aviles*, 1992 WL 715248 at p. 7.

In *Sullivan v. Massachusetts Mut. Life Ins. Co.*, 802 F. Supp. 716 (D. Conn. 1992), the federal court in a prospective opinion concerning Massachusetts' law considered the internal whistle-blowing claim of a former employee. The employer contended that the plaintiff had not made a sufficient claim because the suspected violations were not reported to outside authorities, and the plaintiff never threatened to speak of the suspected violations to any authorities. The court agreed with the plaintiff, finding that internal whistleblowing was sufficient and said:

"This rule makes sense. A rule that would permit the employer to fire a whistle-blower with impunity before the employee contacted the authorities *would encourage employers promptly to discharge employees who bring complaints to their attention, and would give employees with complaints an incentive to bypass management and go directly to the authorities*. This would deprive management of the opportunity to correct oversights straightaway, solve the problem by disciplining errant employees, or clear up a misunderstanding on the part of a whistle-blower. *The likely result of a contrary rule would be needless public investigations of matters best addressed internally in the first instance*. Employers benefit from a system in which the employee reports suspected violations to the employer first; the employee should not, in any event, be penalized for bestowing that benefit on the employer." 802 F. Supp. at 724-25.

A federal court recently predicted the direction of the Delaware Supreme Court in *Paolella v. Browning-Ferris, Inc.*, 973 F. Supp. 508 (E.D. Penn. 1997), and held that if the complaints were made of criminal conduct, then the employee is to be protected from retaliation, while if merely of questionable conduct, the employee is entitled to no protection, noting: "This would be in line with many other courts which have held that public policy protects employees who object internally to illegal activity. [Citations omitted.]" 973 F. Supp. at 512.

A law review article of this precise issue is found in Dworkin and Callahan, *Internal Whistleblowing: Protecting the Interests of the Employee, the Organization, and Society*, 29 Am. Bus. L. J. 267 (1991), where the federal and state statutes are discussed, including

K.S.A. 75-2973. Although this summary concludes by stating: "Judicial decisions refusing to protect internal whistleblowers set a precedent which will discourage whistleblowing and encourage retaliation should be reconsidered," 29 Am. Bus. L. J. at 307, an earlier quote based on their research stated: "More recent state statutes and judicial opinions have shown a reluctance to protect internal whistleblowing despite strong reasons for doing so . . . ." 29 Am. Bus. L. J. at 268. Also see, Telizenski, *Without Warning— The Danger of Protecting "Whistleblowers" Who Don't Blow the Whistle*, 27 W. St. U. L. Rev. 397 (1999-2000).

While there are good reasons to retreat from the broad language of *Palmer*, and certainly not every instance of internal complaint should be actionable whistleblowing, we hold here that the actions of the troopers in openly denouncing and protesting within their chain of command to other "law enforcement officials" illegal activity in not enforcing laws designed for public safety may be protected internal whistleblowing and was correctly submitted to the jury for its determination.

There was contradictory evidence in this case. An administrative agency resolved the facts in favor of the State. A jury resolved the same evidence in favor of plaintiff Barrett. While this may appear to be a contradiction which we should resolve in only one way, based on our standards of review on appeal we will not reverse either result.

The judgments in favor of plaintiffs Connelly, Wade, and Wedermyer are reversed. The judgment in favor of plaintiff Barrett is affirmed.